I'm William Mock. I represent all of the appellants in this action. There are three distinct issues that affect each of the appellants and I will address them in sequence. This appeal presents entirely questions of law that this court can rule upon de novo. There are three very different issues. One, whether the interveners were provided sufficient notice of a martial sale in compliance with the due process clause and with state law and procedures. Whether the district court erred in awarding attorney's fees and costs against the appellees and whether the district court's fine for contempt against one appellee who was appearing in the case pro se, Randy Erkins, denied him due process. The facts of this case go back many years. They're somewhat tortured. I won't try to explain them. I believe that the brief explains them thoroughly. I'll simply focus upon not the historical facts, but the acute facts for the issues of this case. I'd like to take up first the issue of the Marshall's sale of artwork. This case arose from a New York judgment against the Erkins. That judgment was then, it was taken by Bianco, Alfred Bianco, the trustee of a bankrupt entity, a law firm from Boston. It was then assigned to the parties who now participate in this case, George Panagiotou and some other people. They came to Idaho, recorded the judgments, and executed upon property in Idaho, including substantial artwork worth tens of thousands, if not over a hundred thousands of dollars, that was owned by, claimed to be owned by, the Erkins' children. They intervened in the action. Their claims of ownership were then litigated over some three days. The district court found against them. When you say intervened, did they actually intervene or did they file a third party claim? They intervened, as I would at least interpret it. Under the Idaho law, if property of a third party. Third party. Pardon me? It was a third party proceeding, wasn't it? It is, but statute calls. third party proceeding because there was no live underlying action. The underlying action had been resolved with the judgment in the district court in New York. So now the plaintiffs were trying to collect their money and they instituted this, they levied on this artwork and on real property. Correct. And your clients, the Erkins' children, filed a third party claim and said, you can't have this property, it belongs to us. They didn't even file a third party claim, did they? They did not file an original action, which is what I would consider a third party claim. Under the statute, a third party who claims they have an ownership or right to property that's been wrongfully seized can intercede, intervene in the pending action. But there was no pending action. Well, there was an execution action. It was a matter that had been, a foreign judgment that had been recorded. Post-judgment collection enforcement proceedings. True, but there was an action in Idaho. You had to take that judgment from New York, record it in Idaho, sign an Idaho number, then receive a writ of execution from an Idaho court. Correct. It was all post-judgment. All post-judgment from the New York case. They were not parties to the New York case. So why didn't they intervene in the New York case to make these arguments? Because the New York case didn't involve the artwork. The New York case involved a claim for attorney's fees that Gaston Snow claimed was owed by the Irkins on a lender liability suit that was litigated in Idaho. So my only point was this, is that when the plaintiff here, let's just use Bianco. It's easier for me. I can't keep everybody straight. Absolutely. Can't keep everybody straight. But so Bianco comes to Idaho, registers the judgment in Idaho District Court. Correct. Bianco gets a writ of execution. Correct. Levies it on what he believes is Irkin's property. Right? Levies it on property. What they believe was Irkin's property. Real property and personal property, the artwork. Right? Now, one of your arguments is that your client, the Irkin children, did not have notice, I guess, of the levy? Of the sale. Of the sale. Now, that's inconsistent with what the record seems to reflect. I don't believe that's inconsistent. Didn't you try to stop? Didn't they try to stop the sale from going forward? No. They tried to stop. They went in and challenged the seizure. The writ of execution was issued. What about their Rule 62-F motion requesting a stay of the execution proceedings and the scheduled sale by plaintiff? Didn't they file a Rule 62-F motion? Before the sale? Before? I'm not following, Your Honor. I don't know about that motion. The motion that was filed by the Irkin's children, the Rule 62-F motion, requested a stay of the execution proceedings and the scheduled sale by plaintiff. That's correct. On a given day. Pardon me? And on a given day. On a given day. And that was the day the sale occurred. No, the day the sale occurred was after. It was the 12th. It was the 12th. It was after the matter came up before. They filed a motion with respect to the sale of real property. There were separate notices that were published. Recognize this is a proceeding in which parties are represented by counsel. It's been litigated. There's been evidentiary hearings. An order is issued denying my client's objections and claims from the seizure. Then there's a motion for reconsideration that's filed by my clients. That matter is pending with the court. At that point in time, Bianco goes out and has notices published of an intent to do a martial sale on real property in Gooden County, real property in Jerome County, and another notice in another community's newspaper 100 miles away to sell the artwork. But the point is that the Erkins children had actual notice of this. Otherwise, they couldn't have filed the motion. They had no notice of the sale. I would really appreciate two things. I beg your pardon? One, not interrupting, and two, not yelling, okay? Okay, I beg your pardon. We're just trying to get to the bottom of this. I understand. All right? So they did file this motion. You're saying they didn't file the motion to stay, the execution of the sale? With respect to the real property. They did. Not with respect to the artwork. They had no knowledge of the artwork. They learned inadvertently. And in this motion, does it say, including but not limited to execution proceedings in the scheduled sale by plaintiff on February 12, 2002, of certain personal property in which interveners claim an interest? Docket number 135. I mean, it seems to me that that is exactly what happened. That was the day of the sale, and the certain personal property is right in the docket. Well, I'm not familiar with this particular document. Historically, I was involved in the case. You've hit me with something that I'm not familiar with today. But I do know that as the case developed, the fact that there was artwork that was intending to be sold on that date was unknown to my clients. They became aware inadvertently of the scheduled sales in Jerome County and in Gooding County of real property, which may have included personal property as well. There was other personal property seized. But there was a separate notice published in the Boise area for a sale on that day of artwork that they had no knowledge of until after that sale occurred. At the time of the sale on the 12th, the district court had already determined that Erkin's children had no interest in the artwork. Is that correct? No, that's not what they determined. They determined that Erkin's children, that there was substantial evidence that the Erkin's children owned the artwork, but they had not filed their objection within the 14-day time period that was required statutorily. That was the determination. But they still had an interest. The district court had authorized the sale to go forward, correct? The district court had not authorized anything at that point other than issuance of a judgment, of a decision. There was still a motion for reconsideration that was still pending at the point in time that the notices were issued for the sale. Now, you were just going to say something that the Erkin's children inadvertently learned about the sale? They learned about the sale of the real property in Jerome and Gooding County, where a number of them reside and became aware of this. They had no knowledge of the sale of the artwork that occurred on that day in a separate community that would be published in a completely different newspaper. And you claim that they were entitled to notice of the sale? Absolutely. They were entitled to notice. Because why? Because the district court had said they had a substantial interest in the property? They continued to have an interest in the property until the sale occurred. But once the district court determined that they had not timely filed their claim, that under Idaho law, unless you ---- It didn't extinguish their ownership interest. They still had a right to make claims with respect to the manner of the sale. Under Idaho law 11304, they could direct the order in which the property could be sold. They could participate and appear at the sale. They could bid on the sale. Keep in mind, this was a secret sale that occurred. And it's not in the record. But ultimately, the people who purchased the artwork were the Panagiotou who had gotten the case and his lawyers, quietly while nobody was there. Under Idaho law, my clients still had the right to know about it, to direct the order of the sale, and to be there present and actually participate and bid on the sale. Well, and in fact, that's what the federal rules suggest. Under Rule 69, that the state law would apply, and therefore, we would go to Idaho code, and then you get the chance to give the directions of the sale. My worry is that under the two notice things you've suggested here, I read Docket 135, and when it's right there, here's the request from the children, including but not limited to. They want to stay the proceedings. It's an expedited motion under Rule 62F, including but not limited to execution proceedings and the scheduled sale by the plaintiff, which is the day it took place, on February 12th of certain personal property in which the interveners claim an interest. Hard for me to suggest you don't have notice when you're in there arguing about it. Well, as you appreciate, litigants can file a piece of paper that broadly states what they want. But it is not intended to imply that they had actual knowledge of a sale that was scheduled and published to occur in a different community. Let's go further. And they did not. And factually, no one has ever claimed differently than that. Let's go further. What kind of standard or review do I have on this particular situation? Motion to set aside the sale for lack of notice. Judge, what discretion do I owe Judge Windmill? Isn't he to have abuse of discretion on this motion? No, I think it's all reviewed as a matter of law. Well, but a motion to set aside a sale for lack of notice is an abuse of discretion, isn't it? The question is whether or not they got notice or didn't get notice in compliance with Rule 5B, which at that time required actual written notice, although we're not always involved in the case. But we're not really in 5B, counsel. We're in Rule 69. 69 governs what we do in these particular matters, not 5B. The party's briefing on it addressed Rule 5. It's been brought up in the responsive brief that that wasn't raised before. The party's talked about Rule 5 specifically. Let me ask you another question. And it's discussed in the reply brief. As to the notice itself, the notice says that we're given a notice of sale for personal property on the execution by posting the notice in three public places in the precinct or city where the sale is to take place for not less than five nor more than ten days before the time of the sale, or by publishing thereof at least one week, not more than two weeks, in a newspaper published in the county. Now, you're from Idaho, both of you, I know. What would give you the idea that that was to be published every day during that week in that statutory language? Because most counties don't even have a paper that goes out every day. No. Ada County happens to do that, and that's where you live and he lives. But that's not – I mean, I'm down there in old Caribou County. We're lucky to get a paper once a month. I don't believe the statute, Justice Smith, requires that you publish in the paper of the county, but one of general distribution in the county. Well, it says at least one week in a newspaper published in the county if there be one. And there are many that aren't, obviously. I guess I'm just trying to say how do I get statutory construction that would suggest that they knew all about five nor more than ten days when they're talking about when it had to be put on the property, the person, the notice, but when they talk about a week and we're talking about counties in Idaho, how do we come up with days? Well, if you read the statute and you read the statute that follows it, both of those clearly indicate when it's supposed to be a weekly notice or a daily notice, and the language here simply talks about not less than one week nor more than two weeks. It doesn't really go beyond that. But irrespective of whether or not you would agree with Judge Windmill on the application of the statute, the question still looms. There's a pending action. The parties in this action are represented by counsel. What you're sanctioning is allowing what counsel did, which is not to notify the parties, not to notify their attorneys of record, but while a motion for reconsideration is pending, to go out and secretly do the thing which is least effective to give notice, which is to publish it in a newspaper, in the case of artwork, in a community 100 miles away, to schedule the sale in a community 100 miles away and not tell the parties about that. All right, counsel, you're over your time now. Thank you. Thank you very much. Thank you. May it please the Court, fellow counsel. My name is Alan Ellis. I represent the appellee in this matter. First, I would point out to the Court that at ER 251, the Irkins filed a motion to stay enforcement of the judgment and to enjoin the sale. And it says, for an order enjoining the sale of assets seized, the possession of the plaintiff's counsel and real property. That notice was sent to a number of attorneys, including the intervener's attorney. When they talk about assets seized? Assets seized, yes. Are they talking, does that encompass the artwork that was seized by the marshal? It certainly encompasses personal property, which would include the artwork. So when the marshal went out and levied on the artwork, did the marshal actually take possession of it? I think it was left at the premises. Under the law, I think he took possession of it. But did you have possession of it? No. So read that statement again. This is what the order seeks, or the motion seeks. For an order enjoining the sale of assets seized and in the possession of the plaintiff and his counsel. Well, I was not of counsel a record at that time, Your Honor, so I don't know. And real property subject to execution. Now scheduled to occur on February 12, 2002. And my point is that that was sent out to intervener's counsel. Then in a – Isn't it sufficient? I mean, I know we're getting into actual notice, but isn't the notice, at least the way I read Idaho law, was the constructive notice of the publication and the statesman was sufficient under Idaho law to provide notice? I think that's correct. I'm simply responding to counsel's argument that they didn't have a clue that this sale was going to occur. And finally, we have the affidavit of Mr. Mock filed on January 28th, 14 days before the sale. Your client has just learned that on January 9th, 2002, the plaintiff issued a public notice of their intent to sell a personal property belonging to the interveners, which has been seized. So I guess I'm not sure how much difference that makes, but I think the record should be clear. And I think the district court ruled that because the children participated fully in the post-judgment proceedings, that their due process rights were afforded recognition. They filed a motion to challenge the seizure of the artwork. They filed a motion to amend under Rule 59E. And then they filed that motion to stay in enforcement of the judgment. So I think the district court believed that given these plus a three-day hearing, I think the district court believed they were afforded their due process rights. Hans, I'd like to turn you to the attorney's fees and the sanctions issues. Yes. First of all, on the attorney's fees, they're awardable where a party is attempting to collect on the judgment. Correct. Right. So why should the Erkins children seem to have been just trying to determine ownership of the artwork? Right. So why is that considered involving collection on a judgment? Well, they interposed themselves into a commercial matter, and by doing so came within the purview of 12-120 Parent 5. But they weren't judgment debtors in the New York case. That's correct. And the matter was clearly a commercial matter. I guess what is under Idaho law is an action under 12-120 Parent 5 simply a further action in pursuit of the collection of the judgment that one would get under 12-120 Parent 3. Yes. In fact, 12-120 Parent 5 suggests that you've either got to have 1, 2, 3, or 4 parents in order to proceed there. Correct. And as I understand it, counsel, there was no further action ever taken. We're still in the same collection of the judgment, correct? Correct. And the ---- Okay, this gets back to you. So let me just see here. One second. Oh, yeah, okay. In 11-203, subparagraph B, it says, the prevailing party at the hearing may be awarded costs pursuant to the Idaho rules of civil procedure. What's the thing about attorney fees? I don't know if the term cost is a term of art that encompasses fees and costs. Well, where does it say, I mean, where does it say, is there any case in Idaho law that says that cost always encompasses attorney fees? No, I believe in the usual usage, you're right, there are two distinct categories of expenses. But I guess what my point is is that this was clearly a commercial matter. But this whole dispute with Erkin's children was pursuant to 11-203, correct? And other statutes, yes. Well, but they were claiming as a third party, they were not judgment debtors. Correct. They were claiming that they owned that artwork. Right. Right? Right. So they invoked this procedure. Yes. I fail to see why they should be held for attorney's fees under 12-120 simply because the case is a case about an underlying commercial transaction. How do you collect fees in Idaho? Under what code section of the rules of civil procedure do you collect the fees? What do we have to go to? Rule 54E5. Yes. And when you're in that particular rule under Idaho law, what is the one that – how do we get to the attorney's fees for the collection? Because it's in Rule 54, correct? Right. And it's labeled in there as a part of the cost, correct? Right. And therefore, after getting to the part of the cost that you have under Rule 54, you have to either have it by statute or by contract, correct? Correct. Okay. So this is what I don't get. Maybe Judge Smith can answer this. I had to do this every day of my life for a long time. No, but the statute which authorizes attorney's fees in civil actions, Judge Windmill awarded them under 3. And 3 says, in a civil action to recover on an open account, account stated, note bill, negotiable, blah, blah, blah. That's not what Thurgood's children were doing. Yet he awarded the fees under subsection 5, which requires that a party be entitled to reasonable attorney's fees and costs under subsections 1, 2, 3, or 4. So what's your answer to this? The answer is, number one, it's the prevailing party, of course. Not just – it's the prevailing party. And Judge Windmill felt that the breadth of 12-120.5 was such that it included those non-prevailing parties who attacked a judgment unsuccessfully. But he cited 12-123, which does not say that. Well, but the children were attempting to attack a judgment that was based upon a commercial transaction. That's not what that – but that's not what this says. Well, it's what 12-125 says. 12-125, okay. I don't have that one. 12-120. Under Idaho law, under 12-120.3, you attack – you get an attorney fee for a commercial transaction, correct? Correct. And then attorney's fees are issued at the time of judgment, correct? Right. And then if you get the attorney's fees under 12-120, because it's a commercial transaction you go out to collect, as long as they have been accorded the specific that they're a commercial transaction under 120-3, the fact that one will fight the collection of those actions, you have to go to print 5 to do that, correct? Correct. And therefore, as long as they're collecting their commercial transaction under 12-120.3, 12-120.5 will allow them to get attorney's fees in that regard, correct? Correct. Well, wait a second. What is the commercial transaction we're talking about here? We're talking about the attorney-client relationship that resulted in the judgment. Okay, but that's not the action that we're reviewing. That's not the same action that was in front of Judge Windmill. What was in front of Judge Windmill was the enforcement proceeding. No, it's the collection. Enforcement proceeding with respect to a judgment that came to being because of a commercial transaction. All it is at this point is an enforcement proceeding. It doesn't matter how it came to be. Well, it does under 12-120.5 because you can only get them if the underlying matter was, in its first instance, entitlement to attorney's fees, which is 12-123. Let me change, if I could, because your time is running out. I'm a little worried about Judge Windmill's idea for imposing the sanction here. Counsel, don't you believe that this sanction is a criminal sanction? Your Honor, I've not addressed that in my brief, and I have no position. You're talking about contempt now? Yes. My client has no position on that. So your client is not opposing that we undo the sanction? I'm not opposing or asking for that. Okay. Then I won't ask any further questions. Despite my colleague's intimate knowledge of Idaho law. It's not even written anywhere. And your intimate knowledge of Idaho law, I fail to see how you read these statutes as you are as Judge Windmill does. Well, I basically read 12-120.5 apart and separate from the statute you stated. But my whole concern here is that this third-party proceeding was pursuant to 11-203. Was there ever any third-party proceeding? Or was it only a collection action? Was the third party then intervened? I didn't become actively involved in this case until about two years ago. That's not a good answer. Let me ask you this. Without this statute, what was there for the Irkins children to intervene into? Well, they basically claimed an interest in the subject of an execution. Right. They claimed an interest in the personal property that was seized pursuant to the writ of execution. Correct. They said, we own that property. You can't take that property to satisfy this judgment against Mr. Irkins, the father. Right. We own it. It's our property. Right. And you can't have it. And they did that pursuant to 11-203. Right. And I failed to see why they should be saddled with attorney's fees for having done that, just because the underlying action was a commercial transaction. I grant you that 12-120, parent five in parent, does not really address that only parties may take advantage, that is parties to the judgment may take advantage of this section. But it doesn't say they may not either. Well, if they wanted to challenge this in a separate action, which was not for the collection of the debt, they very well had actions they could have filed, couldn't they? Yes. You mean the Irkins children? Yes. What could they have filed? They could file a separate lawsuit alleging that the ownership of the property was in them and not in them. So at the time they learned that the writ had been executed by levying on the artwork, so what you're saying is they could have mounted an affirmative lawsuit, I don't know against who the defendant would be, but for a declaratory relief saying that the property is theirs? Right. And under the – And then what would happen to the writ of execution? They'd have to get a stay of that, correct? Correct. And under the rule 12-120 – So if they failed to prevail in their affirmative lawsuit, let's say they mounted one, would Bianco be entitled to attorney's fees? No. No. Because – So the only reason why they're entitled to attorney – why Bianco's entitled to his attorney's fees is that they invoked an alternative procedure under 11-203. They interposed themselves into a commercial transaction. But the commercial transaction was long over. Well, the judgment still bore the marks of it, though. It still had the coloration of a commercial judgment. The other thing I don't get is that, okay, if they hadn't filed the motion to stay and tried to get into this before the artwork was sold, the artwork once having been sold to these other people, they can't get it back from them because they're bonafide purchasers, and I don't think they have really a way – I mean, they'll never be able to get the art back again, right? There's no way to get it unless they had – And that's what this court found in the matter that was found to be moot. The real property had been sold. Right, and that was us in 2004. That's right. Your name comes back to me, Your Honor. Yeah. And so that would be – and I've addressed that in my brief, that the mootness as well as the law of the case doctrine doesn't work here. All right. Thank you, counsel. Bianca – May I have one minute? No. I think you went over your time already. Bianca B. Erkins will be submitted on the briefs.
judges: Wardlaw, Paez, Smith N. R.